590 So.2d 672 (1991)
Ray G. MONCEAUX, et ux., Plaintiffs-Appellees,
v.
JENNINGS RICE DRIER, INC., et al., Defendants-Appellants.
No. 90-519.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*673 Privat & Regan, Thomas K. Regan, Crowley, for plaintiffs-appellees.
Rose P. Wooden, Asst. Atty. Gen., Baton Rouge, for defendants-appellants.
Before GUIDRY, DOUCET and KNOLL, JJ.
DOUCET, Judge.
This is an appeal from an award of damages in wrongful death and survival actions. Johanna K. Monceaux was killed when her car hit a disabled rice truck parked on the shoulder of U.S. Interstate Highway 10 (I-10) in Acadia Parish.
The facts are not, for the most part, in dispute. At approximately 7:19 p.m. on December 8, 1984, Fred Loewer, owner/manager of Jennings Rice Drier, Inc., contacted Jefferson Davis Parish Sheriff's Deputy Michael Billedeaux. He requested that Billedeaux contact the proper authorities to inform them that the truck would be left on the side of I-10 overnight. The dispatcher for the Jefferson Davis Parish Sheriff contacted the Acadia Parish Sheriff's Office and asked that a State Trooper be sent to check on the truck. Louisiana State Trooper Lester Bernard was reached by radio and informed of the situation. He gave permission to leave the truck and stated that he would check on it while he was on that end of the parish. He never did this. The truck, which according to the evidence was painted in a dark color, remained on the side of the road unmarked by flares or reflectors.
At about 11:00 p.m. on December 8, 1984, Johanna Monceaux left her place of employment, Wal-Mart, in Crowley, La. Along with several girl friends, she drove around Crowley until approximately 3:00 a.m. on December 9, 1984. During that time she drank 2 or 3 cans of beer. At about 3:00 a.m., she left Crowley and drove west on I-10 towards Egan, where she lived with her parents. Calvin Vincent, a truck driver, was following Ms. Monceaux and witnessed the occurrences leading up to her death. According to Mr. Vincent, Ms. Monceaux appeared to doze off just before the Egan exit. Her vehicle swerved off across the shoulder of the road. The wheels on one side of the vehicle went off the shoulder. Mr. Vincent stated that Johanna appeared to regain control of the vehicle. She brought it back onto the shoulder. However, as she attempted to re-enter the roadway, she struck the unlighted, unmarked rice truck. Mr. Vincent stopped to render aid. He tried, with the help of two others, to pull her out of her car. She was pinned under the dashboard. He saw a flame under the hood and ran to his truck for a fire extinguisher. At that point Johanna Monceaux's car burst into flames and she was killed.
As a result, Ray and Joan Perry Monceaux, the parents of Johanna Monceaux filed wrongful death and survival actions against, among others, Jennings Rice Drier, Inc., Fred Loewer, Charles Troutman, who was the driver of the truck, and the Louisiana State Police through the Department of Public Safety. Prior to trial, settlement was reached with Jennings Rice Drier, Inc., Fred Loewer, and Charles Troutman.
The matter was tried before a judge on November 3, 1989. The court rendered *674 judgment apportioning the fault for the accident 25% to Johanna Monceaux, 30% to Fred Loewer, and 45% to the State, Department of Public Safety. The court further awarded $225,000 in damages to each parent and set damages for Johanna Monceaux's conscious pain and suffering at $10,000.00
The State appeals questioning the correctness of the trial court's determination of liability on the part of the State, the apportionment of fault, and the quantum of damages for wrongful death.
LIABILITY
In order to determine whether liability exists, it is necessary to apply a "duty-risk" analysis, asking:
1) Was the act or omission complained of a cause-in-fact of the harm?
2) Did the defendant owe a duty to protect this plaintiff from this type of harm arising in this manner?
3) Did the defendant violate the duty?
Accordingly, we must first consider whether the failure of Officer Bernard to inspect the parked truck was a cause-in-fact of the accident.
"An act of omission is considered to be a cause-in-fact of harm to another if it was a `substantial factor' in bringing about the accident. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970); Lejeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). Restatement of Torts 2d, Sections 431-33 (1965). As noted in the restatement, factors which may be considered in determining whether the actor's negligence is a substantial factor include `whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm ...'
The `substantial factor' test is akin to the `but for' test (i.e. the accident would not have happened but for the defendant's negligence), except that where more than one party's negligence would have caused the accident absent the other party's negligence, Dixie, supra, and Lejeune, supra, hold both to be causative.
As succinctly stated by the Louisiana Supreme Court in Lejeune, supra:
`As Prosser [on Torts, Section 41 at pp. 237-38 (4th Ed.1971)] notes, the "but for" test (that the accident would not have happened but for the defendant's negligence), while it explains the greater number of cases, does not serve as an adequate test for the present situation: `If two causes occur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed ...' In such cases it is quite clear that each cause has in fact played so important a role in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all. Id., p. 239.'"
Trahan v. State, Department of Transportation and Development, 536 So.2d 1269, 1272 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989).
The trial judge found that, while Ms. Monceaux was negligent in dozing off, Trooper Bernard was also negligent in failing to inspect the disabled truck as he had been requested to do, and had agreed to do. The State would have us ignore the substantial factor rule by looking no further than the negligence of Johanna Monceaux.
The accident might have occurred even had Trooper Bernard inspected the truck and seen to it that it was properly marked. However, it is also true that the accident might not have happened except for the combined negligence of Ms. Monceaux, Officer Bernard, and the owner of the truck.
"The mere possibility that the accident would have occurred despite the required precautions does not break the chain of causation." *675 Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, 304 (1962). The negligence of each was a substantial factor in the accident. Accordingly, the negligence of each was a cause-in-fact.
Having established that the negligence of Officer Bernard was a cause-in-fact of the accident, we must determine whether Officer Bernard owed a legal duty to the traveling public which encompassed the risk to which the plaintiff was exposed in this case.
When a law enforcement officer becomes aware of a dangerous traffic situation, he has the affirmative duty to see that motorists are not subjected to unreasonable risks of harm. Duvernay v. State, Dept. of Public Safety, 433 So.2d 254 (La. App. 1st Cir.1983), writ denied, 440 So.2d 150 (La.1983). There is no doubt that the unmarked, unlighted truck parked on the side of I-10 at night posed a dangerous traffic situation and subjected motorists to an unreasonable risk of harm. The State argues, however, that the trial judge erred in finding that Officer Bernard was aware that the situation existed. Officer Bernard testified that he asked the dispatcher if the truck was properly marked and was informed that it was. However, Officer Billedeaux of the Jefferson Davis Parish Sheriff's Office and Officer Frease, radioman for the Acadia Parish Sheriff's Office, testified that they recalled no mention of whether the truck was equipped with warning devices. It was stipulated that Ms. Darcy, dispatcher with the Jefferson Davis Parish Sheriff's Office, would have testified similarly. The trial judge, in giving his reasons for judgment at the end of trial, stated: "... I do not give credence to Trooper Bernard as to his statement that he inquired as to whether or not this vehicle was protected by flares or other devices." Where a finding by the trier of fact is based on its decision to credit the testimony of one witness over another, that finding can virtually never be manifestly erroneous in the absence of conflicting documentary evidence or internal inconsistencies in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989), on remand, 558 So.2d 1360 (La.App. 4th Cir.1990), writ denied, 561 So.2d 105 (La.1990). Accordingly, we will respect the trial judge's credibility evaluation. Since Officer Bernard knew about the possibility that a dangerous situation existed, he had a duty to protect motorists from the risk. This duty extends not only to prudent, attentive drivers but to those who are momentarily inattentive or careless. Burge v. City of Hammond, 494 So.2d 539 (La.1986).
Finally, it must be determined whether that duty was breached. We have no problem in finding that it was. Officer Frease testified that Officer Bernard said "10-4, I'll be on that end of the parish and I'll check it." However, rather than being sure that the truck was not creating a hazard, and doing everything within his authority to ameliorate the situation, he failed to check on the truck in the almost eight hours between the time he was told about the truck and the occurrence of the accident.
We have found that Officer Bernard's failure to act was a cause-in-fact of the accident, that he had a duty and that he breached it. As a result, we find that the trial court was correct in finding the State liable for the accident.

APPORTIONMENT OF FAULT
La. C.C. 2323 provides that:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
This court in Ledbetter v. State, Dept. of Transp. & Dev., 482 So.2d 1035, 1038 (La. App. 3rd Cir.1986), affirmed 502 So.2d 1383 (La.1987), stated that:
In a case where the fault of a motorist and the fault of a governing body responsible for warning travelers against *676 unusually dangerous road hazards combine to produce an accident, comparative negligence is applicable. C.C. art. 2323; Veazey v. Parish of Avoyelles, 476 So.2d 1057 (La.App. 3rd Cir.1985).
Our Supreme Court, in the case of Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, at 974 (La.1985), gave us guidelines to assist in the determination of percentages of fault.
"in assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including, (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Apportionment of fault is a factual matter. The trial court's findings in this regard should not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Baugh v. Redmond, 565 So.2d 953 (La.App. 2nd Cir.1990); Central La. Electric Company v. Cox Construction Co., Inc., 471 So.2d 1117 (La.App. 3rd Cir. 1985). The trial court found the State, Department of Public Safety to be 45% at fault in causing the death of Johanna Monceaux. After reviewing the record, it is apparent that fault was wrongly apportioned. Officer Bernard breached his duty to the traveling public. His failure to investigate and correct a dangerous situation created a substantial risk of harm to the public. The testimony of Mr. Vincent was that Ms. Monceaux seemed to be in control of her vehicle as she reentered the road. Had the truck been properly marked, she might have been able to avoid the accident. However, considering the facts in light of the Watson guidelines, we find that the major part of the fault lies with Fred Loewer in allowing the truck to remain on the highway unmarked in spite of the risk involved. Accordingly, we believe that fault should properly be apportioned 50% to Fred Loewer, 25% to the State, Department of Public Safety, and 25% to Johanna Monceaux.

QUANTUM OF DAMAGES
The trial court awarded damages in the amount of $225,000 to each parent for the wrongful death of Johanna Monceaux. The State argues that this is excessive and cites a variety of cases which it claims limit damages for loss of a child to a maximum of $150,000 in each and every case. This is not and has never been the law of this State. See for example, Whittington v. American Oil Co., 508 So.2d 180 (La.App. 4th Cir.1987), writ denied, 512 So.2d 436 (La.1987).
Use of prior awards as a yardstick against which to measure damages has been expressly disapproved by our courts.
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
With regard to appellate review of the much discretion of the trier of fact in the award of general damages, La.C.Civ.P. art. 1934(3), we stated (after exhaustive review of the facts, and reversing the appellate court for disturbing (on the basis of prior awards) the trier of fact's award) in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 132 (1967) (Italics ours):
The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed *677 unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the trial court.... The facts and circumstances in the other neck injury awards, relied upon by respondent as showing that this award was all out of proportion with the previous awards for similar injuries, causes them to have little or no relevancy for purposes of demonstrating the excessiveness of this award.
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's much3 discretion,' La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case."
Reck v. Stevens, 373 So.2d 498, 501 (La. 1979). After reviewing the evidence with regard to the damage sustained by Mr. and Mrs. Monceaux as a result of the death of their daughter, we find no error in the award of $225,000 each.
The situation in this case stands in sharp contrast to that before this court in Johnson v. Georgia Casualty & Surety Co., 488 So.2d 1306 (La.App. 3rd Cir.1986), writs denied, 493 So.2d 1223, 493 So.2d 1224 (La. 1986), much relied on by the defendant in brief. The record here shows that the Monceauxs relied on their daughter both physically and emotionally. She had, just days before her death, returned home from college permanently to help her parents care for her aging grandparents. Her father, who had failing eyesight, relied on her for transportation. The testimony established that she and her parents had an unusually close, emotional bond. Additionally, there is medical testimony which establishes the severe physical and emotional toll taken on by both parents by their daughter's death. While the award is high we cannot, under the circumstances say that it is excessive.

CONCLUSION
We find no error in the trial court's determination of liability or award of damages. The judgment is amended to reflect that fault for the accident is apportioned 25% to Johanna Monceaux, 50% to Fred Loewer, and 25% to the State, Department of Public Safety. Accordingly, the judgment of the trial court is affirmed as amended.
AFFIRMED AS AMENDED.