KNOLL, Judge,
dissenting.
In essence, by apportioning the greater percentage of fault on the driver, the majority is saying had he not fallen asleep at the wheel, the accident never would have happened. The majority fails to go one step further and say — but for the absence of the guardrail, there would not have been a fatality. In amending the trial court’s apportionment of fault, the majority incorrectly analyzes the absence of the guardrail by DOTD as a eause-in-fact of the accident rather than correctly under a causation analysis of cause-in-fact of the harm. The absence of the guardrail was not the eause-in-fact of the accident; the accident still would have happened had the guardrails been in place, but the harm would have been substantially reduced. These facts alone distinguish the case sub judice from Cay v. State, Through DOTD, (La.1994); 631 So.2d 393, relied upon by the majority. Since the accident would have happened anyway under the facts of this case, DOTD alone had the exclusive power, control and duty to reduce the resulting harm and that breach makes DOTD more to blame for the resulting fatality. Except to the extent that the driver’s negligence set the accident in motion, the driver had no control over the resulting harm and his negligence was not a substantial factor in causing the fatality. It was clearly the absence of the guardrail. It cannot be overlooked that the purpose of a guardrail is to reduce damages and injuries.
The record overwhelmingly shows that the absence of the guardrail was undoubtedly a substantial factor in bringing about the death of the passenger, Robert Frazier. This was convincingly proven by plaintiffs expert witness, Larry Tipton. Tipton presented a detailed reconstruction of how he believed the accident would have progressed had guardrails been installed. This analysis was supported by photographs from an actual crash test conducted in 1987. These photographs vividly depicted a test vehicle being crashed into a guardrail similar to the type that would have been installed at Crib Creek, at 60 mph and at an angle of impact of approximately 26 degrees. The results showed surprisingly little damage to the test vehicle. Not only did DOTD’s expert, Mr. Joseph Blaschke, admit that Tipton’s estimations of the angle of impact of Ledford’s vehicle (approximately 25 degrees) and the speed of impact (approximately 47 mph) were realistic, no DOTD expert offered crash test results or other empirical data supporting DOTD’s claim that the injuries would have been just as severe had a guardrail been in place. DOTD attempted to distinguish the results in Tipton’s crash test from Ledford’s accident by asserting that Ledford’s vehicle was also “yawling” or rotating immediately prior to impact and thus could not be compared to Tipton’s crash test. DOTD also claimed that minor differences in construction between the guardrail in the crash test and the type of guardrail that would have been installed at Crib Creek could result in drastically different levels of damage to a vehicle striking these two guardrails. However, while DOTD could offer expert opinions that Tipton’s analysis of the accident was faulty, its experts never presented the detail basis for their opinions that Tipton did. DOTD offered no documented evidence of what effect the vehicle rotation would have upon impacting the guardrail, nor did it explain any physical differences that actually existed between the guardrails in Tipton’s crash test and the guardrails that would have been installed on the Crib Creek bridge. DOTD expert opinions appeared far more speculative than Tipton’s. There is no question that DOTD’s fault is more substantial for the resulting harm than the driver, Richard Ledford, as correctly reasoned by the learned trial court. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
The majority relies upon selective jurisprudence that does not involve negligent conduct of a second actor that was a substantial factor in bringing about the harm. The majority ignores the body of jurisprudence pertaining to inattentive drivers, which are the facts of this case, employs an incorrect causation analysis for the cause-in-fact of the harm, and substitutes its views over the trial *1232 court in selecting credible expert witnesses and apportioning fault.
The majority’s opinion is in direct conflict with this circuit’s holding in Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672 (La.App. 3rd Cir.1991), which involved an inattentive (sleeping) driver leaving the roadway at nighttime and upon reentry, colliding with an unlighted, unmarked rice truck. The driver, who was killed as a result of the collision, was found to be only 25% at fault, just as the trial court assessed the driver in the case sub judice. The correct causation analysis was applied in Monceaux and that same causation analysis is applicable to the facts of this case.
Clearly, the record does not support that the trial court committed manifest error in its assessment of the evidence. The majority opinion represents a difference of view rather than manifest error. The trial court’s judgment should be reinstated.
For these reasons, I respectfully dissent.